**Kokou Meleabge AFEANEKU,
Petitioner,**

**v.**

**John ASHCROFT, Attorney General of the United States of America, Respondent.**

**No. 02–3581.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 9, 2004.

Decided April 30, 2004.

Michael G. Moore, Springfield, MA, for Petitioner.

Linda S. Wernery, Douglas E. Ginsburg, John M. McAdams, Jr., William C. Peachey, United States Department of Justice,

Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SLOVITER, NYGAARD, and OBERDORFER,[1] Circuit Judges.

## OPINION OF THE COURT

OBERDORFER, Senior District Judge.

Petitioner Kokou Meleagbe Afeaneku, a native and citizen of Togo, seeks review of the Board of Immigration Appeals' decision affirming the denial by an immigration judge of Afeaneku's application for political asylum and withholding of removal. For the reasons detailed below, we deny the petition for review.

## I. BACKGROUND

Because we write only for the parties, we will not restate the full facts of the case. The following facts are undisputed and are drawn from Mr. Afeaneku's asylum application, his unsworn supplemental submission in support of the asylum application, and his direct and cross-examination at a hearing before the immigration judge.

Afeaneku worked in The Republic of Togo as a merchant seaman. Since 1989, he also was an active member of the Union of Forces of Change (UFC), a "political group seeking to oust the present military dictatorship." Administrative Record (AR) at 325. In the UFC, he served as an "agitator" and "truck distributor," his role being to explain democratic concepts to the Togolese people and to distribute political leaflets. AR at 94, 103–04 (Tr. of Hr'g Sept. 24, 1997). In 1993, while he was a crew member aboard the ship M/S Nestor in Abidjan, a city in the African nation of Ivory Coast, Afeaneku received flyers calling for boycott of the Togo presidential elections which were intended for delivery to UFC officials in Lome, Togo. *See id.* at 329 (Addendum to Asylum Application dated Jun. 27, 1997). When he arrived in Togo, he loaded the boxes of flyers and his personal belongings into a taxi to carry home. While still in the port, one of the boxes of flyers broke open, spilling out some flyers, a number of which were subsequently found by Togolese customs agents. Afeaneku delivered the remainder of the flyers to a UFC official in Togo. The following day, Togolese police searched the ship and questioned him regarding his activities. He was not arrested, and the police permitted him to depart Togo by ship the following night. Afeaneku had no interactions with the police between the 1993 flyer incident and April 1996.

In April 1996, Afeaneku and his then employer Sorinco Marine—a commercial shipping concern—had a dispute over Afeaneku's compensation. As a result, Afeaneku threatened to file suit against Sorinco Marine. Shortly after that, a Sorinco Marine official "went to the police and expose[d][to] them the facts regarding [his] involvement in getting those political fl[y]ers." AR at 329 (Addendum to Asylum Application dated Jun. 27, 1997). The Togolese police issued a series of convocations for Afeaneku to report to the police headquarters. *See id.* at 127 (Trans. of Hr'g Sept. 24, 1997). The convocations do not state the reason for their issuance. Afeaneku stated his belief that the convocations relate to the 1993 flyers issue because he "didn't commit any [other] crime" in the interim period. *Id.* at 139. He also stated his belief that the Togolese government would be concerned in 1996 about the 1993 activities because the government

---

1. Honorable Louis F. Oberdorfer, Senior United States District Judge for the District of Columbia, sitting by designation.

was attempting to stamp out opposition for the 1998 presidential election. He provided no additional evidence in support of the claimed connection between the 1993 episode and the 1996 convocations.

Although Afeaneku threw away the first two convocations because he was "so angry," *id.* at 127, he went into hiding for seven days and, in April 1996, fled to the United States. He testified that although he was wanted by Togolese authorities, he was able to pass through Togolese passport control on his way out of Togo to the United States under "some kind of arrangement." *Id.* at 150.

Afeaneku entered the United States on June 24, 1996 as in-transit seaman with authorization to remain in the United States no later than July 22, 1996. He remained in the United States following that date. On February 28, 1997, he filed an application for asylum and withholding of deportation, in which he stated that he believed that because of his involvement in the activities of the UFC, his life was in danger if he returned to Togo. Afeaneku stated he delayed from applying for asylum from June 1996 until February 1997 because he did not initially intend to stay in the United States, but subsequently decided that "his life was in serious danger." *Id.* at 156.

On May 14, 1997, the INS instituted removal proceedings against him. On June 27, 1997, Afeaneku appeared before an immigration judge (IJ). In that hearing, he conceded deportability. *See id.* at 67. On September 24, 1997, he appeared before the IJ for a hearing on the merits of his application. He was the only witness to testify at his merits hearing. At the request of INS counsel, the hearings were continued to allow forensic examination of Afeaneku's convocation documents. On March 27, 1998, the hearings continued, at which time INS counsel reported that he was unable to obtain forensic examination of the convocation documents.

At that close of that hearing, the IJ rendered an oral decision denying Afeaneku's application for asylum and withholding of removal, and ordered him removed to Togo. In reaching her decision, the IJ first recognized that Afeaneku did not assert any claim of past persecution, but rather based his claim solely on fear of future persecution on account of political opinion or membership in the UFC if he returned to Togo. The IJ also noted the paucity of record information regarding the UFC, and that the only reference to the UFC in the State Department's country report was that the party general's secretary was detained and released after thirty-six hours. AR at 39 (Tr. of Mar. 27, 1998 Hr'g); *id.* at 188 (U.S. Dep't of State Togo Report on Human Rights Practices for 1997, dated Jan. 30, 1998) ("In December security forces detained Jean–Pierre Fabre, the Secretary General of [the UFC] Party. .... The Government ... did not file charges, and released Fabre after a 36–hour detention."). "Other than that," the IJ concluded, "there is no general information that would indicate a pattern or practice of persecution against members of [Afeaneku's] political party." *Id.* at 39. The IJ noted that Afeaneku conceded that he was never threatened with arrest and never experienced any problems with the government of Togo in clear connection with the 1993 flyer incident other than the 1993 questioning. Based on the record evidence, the IJ concluded, Afeaneku failed to establish any causal link between the 1993 distribution of political leaflets and the 1996 convocations. Moreover, reasoned the IJ, the record establishes that "even more prominent members of [the UFC] have been taken into custody for very brief questioning" and "have not been held for any lengthy period of time." *Id.*

at 49. Thus, concluded the IJ, it "does not follow that [Afeaneku], who passed leaflets out years ago, has a reasonable fear of persecution by the government as a result," particularly in light of the absence of any "evidence of any person similarly situated to [Afeaneku] who had been persecuted by the government in such a manner." *Id.* at 50.

On May 31, 2002, the Board of Immigration Appeals (BIA) affirmed, without opinion, the IJ's decision. Afeaneku appeals.

## II. DISCUSSION

"A grant of asylum allows an otherwise-removable alien to stay in the United States." *Abdulai v. Ashcroft,* 239 F.3d 542, 545 (3d Cir.2001). "Subject to numerous exceptions not implicated in this case, the Attorney General may grant asylum to an alien he determines to be a refugee." *Id.* (internal citations and quotation marks omitted). As relevant to this case, a person is a "refugee" if he or she is "unable or unwilling" to return home "because of persecution or a well-founded fear of persecution on account of ... political opinion." *Id.* (quoting 8 U.S.C. § 1101(a)(42)(A)).

"Withholding of removal, in contrast, confers only the right not to be deported to a particular country – not a right to remain in this one." *Abdulai,* 239 F.3d at 545 (citing *INS v. Aguirre-Aguirre,* 526 U.S. 415, 419, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999)). An alien is entitled to withholding of removal "if the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). In contrast to the discretionary relief available to individuals who qualify for political asylum, "if an alien qualifies for withholding of deportation ... then the Attorney General is prohibited from deporting the alien to the country where the prosecution will occur." *Lin v. INS,* 238 F.3d 239, 244 (3d Cir.2001). To qualify for mandatory relief under withholding of deportation, an applicant must show that it is more likely than not that he will face persecution if he is deported. *See id.* Because this standard is more stringent then the well-founded fear of persecution standard required for asylum, an alien who fails to satisfy the well-founded fear standard also fails to satisfy the standard for withholding of removal. *Janusiak v. U.S. INS,* 947 F.2d 46, 47 (3d Cir.1991).

We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a)(1). When, as in this case, the BIA employs its streamlining procedures, "we review the IJ's opinion and scrutinize its reasoning." *Dia v. Ashcroft,* 353 F.3d 228, 245 (3d Cir.2003) (en banc). We review the IJ's determination that Afeaneku failed to demonstrate a well-founded fear of persecution if returned to Togo under the substantial evidence standard. *Abdille,* 242 F.3d at 483. Under that standard, Afeaneku must show "that the evidence he presented was so compelling that no reasonable factfinder could fail to find" that he has a well-founded fear of persecution. *Lukwago v. Ashcroft,* 329 F.3d 157, 167 (3d Cir.2003) (quoting *Abdille,* 242 F.3d at 484). We can only reverse if we are convinced that the record "not only supports that conclusion, but compels it." *Id.*

Afeaneku has not shown that the record satisfies that standard. For substantially the same reasons identified by the IJ and summarized above, we are persuaded that substantial evidence supported the IJ's finding that Afeaneku failed to demonstrate a well-founded fear of persecution if returned to Togo. *A fortiori,* Afeaneku has not shown that the evidence compels a finding that there is a "clear probability" of persecution, the standard required to

justify a reversal of the IJ's denial of his application for withholding of removal. *Janusiak* 947 F.2d at 47.

For the foregoing reasons, the petition for review of the Board of Immigration Appeals is DENIED.